No. 23          April 12, 2013          161

IN THE OREGON TAX COURT
REGULAR DIVISION

LAKEVIEW FARMS, LTD.,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant*,
*and*

WASHINGTON COUNTY ASSESSOR,
*Defendant-Intervenor.*

(TC 5041)

Plaintiff (taxpayer) appealed from a Magistrate Division decision as to the exemption of personal property used in taxpayer's farming operations in Washington County. Taxpayer argued that its trains and boats, traffic cones and wheelbarrows used by taxpayer's pumpkin patch visitors were all exempt under ORS 307.394 as qualifying farm machinery and equipment. Defendant-Intervenor (the county) argued that its assessments under the statute were proper. The county and Defendant Department of Revenue (the department) filed a counterclaim under ORS 305.437 on the ground that taxpayer's appeal was frivolous. Following trial, the court found that taxpayer had not met its burden of proof and that the subject property was not exempt under ORS 307.394. The court further found that taxpayer's appeal was not frivolous under statute, as its claims were not objectively unreasonable.

Trial was held May 15, 2012, in the Washington County Courthouse, Hillsboro.

Lynn R. Stafford, Attorney at Law, Portland, argued the cause for Plaintiff (taxpayer).

Brad Anderson, Washington County Counsel, Hillsboro, and Douglas M. Adair, Senior Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant-Intervenor Washington County Assessor (the county) and Defendant Department of Revenue (the department).

Decision for Defendants rendered April 12, 2013.

**HENRY C. BREITHAUPT, Judge.**

## I. INTRODUCTION

This case comes before the court following a trial in the Regular Division. Plaintiff (taxpayer) argues that certain personal property used by taxpayer on its farm in North Plains was exempt from assessment under ORS 307.394 during tax year 2009-10.[1] In the alternative, taxpayer disputes the valuation assigned to taxpayer's property by Defendant-Intervenor Washington County Assessor (the county). Lastly, taxpayer objects to assessment of taxes against its personal property as property omitted from the tax rolls for the five tax years leading up to the 2009-10 tax year (2004-05, 2005-06, 2006-07, 2007-08, and 2008-09) and associated penalties for failing to file personal property tax returns in each of those years.

## II. FACTS

Taxpayer operates a farm on 1,600 acres near the city of North Plains in Washington County. During the tax years at issue taxpayer was owned and controlled by various members of the Cropp family.

Taxpayer's operations include a pumpkin patch located on 14 acres that is open to the public for roughly five weeks every year—from the last week of September through Halloween. The pumpkin patch is located on the far side of a reservoir located on taxpayer's property. Taxpayer's parking area is on the near side of the reservoir, as is a retail shop where visitors can purchase handicrafts and snacks and pay for their pumpkins. Visitors can reach the pumpkin patch by walking around the lake, but taxpayers have also taken the opportunity to provide visitors with alternative modes of conveyance.

Taxpayer has constructed on the farm a 16 inch gauge railroad and two small trains to run on these rails. Each train has five cars and is of sufficient size to carry people to and from the pumpkin patch. Michael Cropp, the owner of the stock of taxpayer at the time, constructed the trains by hand at considerable expense and built them to suit taxpayer's specific needs. Among other idiosyncrasies,

---

[1] All references to the Oregon Revised Statutes (ORS) are to the 2009 edition.

the trains lack brakes because the terrain apparently permits train operators to bring the trains to a stop without the assistance of brakes. The train takes visitors to the pumpkin patch and back to the near side of the reservoir. En route to the pumpkin patch the train passes through a tunnel filled with Halloween decorations.

Visitors also have the option of crossing the reservoir on one of three boats that taxpayer has had built for that purpose. Because many visitors use wheelbarrows provided by taxpayer to convey their pumpkins from the pumpkin patch to the cash register (and ultimately, to their own vehicles) the boats are built to accommodate both visitors and wheelbarrows. The reservoir contains a mechanical shark and a mechanical Loch Ness monster that are activated when a boat carrying visitors passes near. Michael Cropp built two of the boats out of steel and the third—at significantly greater expense—from aluminum.

The pumpkins in taxpayer's pumpkin patch at any given time may or may not have actually been grown in taxpayer's pumpkin patch. Michael Cropp testified at trial that the same plot of land cannot be used year after year to grow pumpkins, so pumpkins are often grown on other parts of taxpayer's farm and then brought to the pumpkin patch for visitors to choose from. Michael Cropp also testified to the effect that on at least one occasion demand for pumpkins so outstripped the supply of pumpkins actually grown on taxpayer's farm that he purchased pumpkins from another local farm to make up the difference.

During the fall season, taxpayer charges visitors a general admission fee of $4.00 to ride either the boats or the trains to the pumpkin patch. Visitors who pay the general admission fee also receive a discount of $1.00 toward the purchase price of a pumpkin, should they choose to purchase one. Also included in the general admission is access to a hay maze, a hay jump, a petting zoo, and other attractions. Pumpkins can also be purchased at taxpayer's retail shop without paying admission and without any discount. Taxpayer prices its pumpkins by size, and other than the $1 discount given to visitors who pay the general admission fee, prices are the same regardless of whether a given

pumpkin is selected from the pumpkin patch or from taxpayer's retail store. In addition to the pumpkin patch, taxpayer operates a corn maze and a "caterpillar ride" during the fall season and charges visitors a separate fee to enjoy each of those attractions.

Taxpayer provided figures for the combined receipts of all activities from its main operating season, but was unable to provide a breakdown attributing the overall receipts to any specific attraction. That is to say that taxpayer was not able to break out how much income came directly from pumpkin sales, how much from admissions to ride the boats or trains, and how much from the corn maze. However, using taxpayer's own estimates for annual attendance during the late-September-through-Halloween period, about half of taxpayer's total pumpkin patch-related income appears to be attributable to admission fees to ride either the train or the boats.

In addition to taxpayer's main operating season, taxpayer's farm is available for rental as a venue for company picnics, weddings, and other social occasions. Taxpayer routinely makes one boat and one train available to visitors on such occasions. However, such non-pumpkin patch related activity is vastly outweighed by taxpayer's pumpkin patch related activity.

In 2009 the county's staff became aware that taxpayer's personal property was not listed on the county assessment roll. The county sent notices of intent to add taxpayer's personal property to the assessment rolls for 2004-05, 2005-06, 2006-07, 2007-08, 2008-09, and 2009-10 as omitted property. These notices of assessment were all dated December 30, 2009, and notified taxpayer of his opportunity to appear at a show cause hearing to contest the additions to the tax rolls. On February 10, 2010, the county sent to taxpayer a letter indicating that the county had corrected the assessment rolls for the tax years 2004-05 through 2009-10 and informing taxpayer of its property tax and penalties owed. This letter also explained taxpayer's right to appeal the actions of the county to the Magistrate Division, a right that taxpayer chose to exercise. Taxpayer and the county made use of the mediation services offered

by the Magistrate Division and reached an agreement regarding most of the personal property in taxpayer's personal property tax account. However, they were not able to come to an agreement regarding taxpayer's boats, trains, wheelbarrows, and traffic equipment and proceeded to trial with regard to those items. The magistrate found against taxpayer, and taxpayer timely appealed to the Regular Division. *See Lakeview Farms, Ltd. v. Washington County Assessor*, TC-MD No 100443D (Oct 13, 2011).

At trial before this division, taxpayer advanced three arguments: First, that taxpayer's trains and boats, as well as certain traffic cones used to control taxpayer's parking area and the wheelbarrows used by taxpayer's visitors to transport pumpkins, were all exempt under ORS 307.394. Second, and alternatively, that even if taxpayer's property was not exempt from taxation, that the county's valuation of the boats, trains, traffic cones, and wheelbarrows were all incorrect. Third, and extending from taxpayer's first argument, taxpayer argued that the county erred by assessing tax on taxpayer's personal property for the tax years 2004-05, 2005-06, 2006-07, 2007-08, 2008-09, and 2009-10. The county and Defendant Department of Revenue (the department) have requested damages under ORS 305.437 for what they characterize as a "frivolous, groundless" appeal by taxpayer.

## III.   ISSUES

1.   Whether the personal property of taxpayer is exempt from ad valorem property tax under ORS 307.394.

2.   Whether the valuations of taxpayer's property put forth by the county are incorrect.

3.   Whether the county erred in assessing tax for the tax years 2004-05, 2005-06, 2006-07, 2007-08, and 2008-09.

4.   Whether taxpayer should be penalized under ORS 305.437 for filing a frivolous appeal.

## IV.   ANALYSIS

A.   *Exemption*

ORS 307.030 reads, in pertinent part:

"All \*\*\* tangible personal property situated within this state, except as otherwise provided by law, shall be subject to assessment and taxation in equal and ratable proportion."

Taxpayer argues that its property is exempt under any of three subsections of ORS 307.394. The relevant text of that statute reads as follows:

"(1)   The following tangible personal property is exempt from ad valorem property taxation:

"(a)   Farm machinery and equipment used primarily in the preparation of land, planting, raising, cultivating, irrigating, harvesting or placing in storage of farm crops;

"\*\*\*\*\*

"(d)   Farm machinery and equipment used primarily in any other agricultural or horticultural use or animal husbandry or any combination of these activities.

"(2)(a)   Items of tangible personal property, including but not limited to tools, machinery and equipment that are used predominantly in the construction, reconstruction, maintenance, repair, support or operation of farm machinery, and equipment and other real or personal farm improvements that are used primarily in animal husbandry, agricultural or horticultural activities, or any combination of these activities, are exempt from ad valorem property taxation."

In order to prevail before the Oregon Tax Court, a party seeking affirmative relief bears the burden of proving its case by a preponderance of the evidence. ORS 305.427. A "preponderance of the evidence" means that with regard to any factual question at issue in the case, the majority of the evidence in the record before the court must support the position taken by taxpayer on that question. For the following reasons, the court concludes that taxpayer has failed to satisfy the burden of proof by showing that its trains, boats, wheelbarrows, and traffic safety equipment are exempt from property tax under ORS 307.394.

As a preliminary matter, the court notes that ORS 307.394(1)(a) and (1)(d) both call on the court to first determine whether taxpayer's boats, trains, wheelbarrows, and

traffic equipment are "farm machinery [or] equipment." The Supreme Court, interpreting that term as it appeared in the predecessors of ORS 307.394(1)(a) and (1)(d), held that in order to be "farm machinery [or] equipment," property must be "used to cultivate farm land or to raise animals." *King Estate Winery, Inc. v. Dept. of Rev.*, 329 Or 414, 419, 988 P2d 369 (1999). Taxpayer does not claim that it uses the property at issue in this case to raise animals. However, taxpayer does argue, as part of its argument for exemption under ORS 307.394(1)(a), that it uses these items to harvest pumpkins.

The court has no difficulty agreeing that harvesting is a part of cultivation and that property used to harvest crops would be considered "farm machinery [or] equipment" for purposes of ORS 307.394(1)(a) and (1)(d). The county rightly points out that taxpayer's alleged use of the trains and boats to harvest crops is most likely not an "accepted farming practice" under the statutes governing farm use special assessment. In other words, taxpayer's alleged use of its trains and boats to harvest pumpkins is not of a sort "common to farms of a similar nature, necessary for the operation of these similar farms to obtain a profit in money and customarily utilized in conjunction with farm use." *See* ORS 308A.056(4)(a). However, the text of ORS 307.394 does not make reference to the standards of ORS 308A.056(4)(a), and this court will not here venture an opinion as to whether, if taxpayer's use of its trains and boats does not meet those standards, that necessarily bars those trains and boats from treatment as "farm machinery [or] equipment."

On the other hand, for reasons discussed below, the court concludes that taxpayer has failed to satisfy the burden of showing that it uses its boats, trains, wheelbarrows, and traffic equipment to harvest pumpkins—and the court cannot discern from the record another use related to the cultivation of land for these items. The court therefore cannot conclude that the items at issue in this case are "farm machinery [or] equipment." However, because stating this conclusion here in some respects puts the cart before the horse, the court will address both ORS 307.394(1)(a) and ORS 307.394(1)(d) in further detail.

1.  *ORS 307.394(1)(a)*

Putting aside for the time being the question of whether taxpayer's boats, trains, wheelbarrows, and traffic safety equipment are "farm machinery [or] equipment," taxpayer argues that these items are exempt under ORS 307.394(1)(a) because they are used "primarily" for "harvesting" pumpkins. Taxpayer's theory is, in effect, that it outsources the harvesting of its pumpkins to its visitors, who actually pay taxpayer for the privilege. Taxpayer's boats and trains carry its visitors to and from the pumpkin patch and the visitors use the wheelbarrows provided by taxpayer to carry pumpkins back to taxpayer's retail shop, where they pay for their pumpkins. The traffic safety equipment, while not directly used in the harvesting process, is used in—and would not be needed but for—taxpayer's purported reliance on its visitors to harvest its pumpkins.

To prevail on this subsection taxpayer has to prove two things by a preponderance of the evidence: (a), that the property at issue in this case is used to harvest its pumpkins; and (b), that harvesting pumpkins is the taxpayer's primary use for these items. For the following reasons the court concludes that taxpayer has failed to carry the burden of proof with regard to both of these questions.

a.   Failure to prove the items at issue in this case were used to harvest pumpkins

With regard to taxpayer's use of the property at issue in this case to harvest pumpkins, the court is of the opinion that taxpayer has failed to prove that its trains, boats, wheelbarrows, and traffic equipment are used to "harvest" pumpkins as that term is used in ORS 307.394(1)(a). When interpreting Oregon statutes, Oregon courts look to the text and context of the statute, giving words of common usage their "plain, natural and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). To "harvest" is "to gather in (a crop)." *Webster's Third New Int'l Dictionary* 1036 (unabridged ed 2002). The court heard testimony at trial, however, to the effect that the pumpkins taken by taxpayer's visitors from the pumpkin patch are not always grown in taxpayer's pumpkin patch. Instead, they are often grown on other parts of taxpayer's farm—and in at least one instance, on another

local farm—and are deposited at taxpayer's pumpkin patch for visitors to choose from. Before those pumpkins can be deposited in taxpayer's pumpkin patch, however, they have to be "gathered in" by somebody—presumably employees of taxpayer or of another local farm—and transported to taxpayer's pumpkin patch. The court understands that first gathering in as the "harvesting" that is referred to in ORS 307.394(1)(a).

When pumpkins are grown elsewhere and transported to taxpayer's pumpkin patch, the pumpkins have in fact already been harvested by whoever took those pumpkins from the locations where those pumpkins were grown. Taxpayer's "pumpkin patch" then functions only as a storage area where taxpayer's customers come to choose a pumpkin that has already been harvested. In those instances the boats, trains, wheelbarrows, and traffic safety equipment cannot be said to be used for "harvesting" pumpkins. In fact, they can best be characterized as being used to take pumpkins out of storage—an activity that is not exempt under ORS 307.394.

To the extent that taxpayer's boats, trains, wheelbarrows, and traffic safety equipment were used by taxpayer's visitors to transport any pumpkins actually grown in taxpayer's pumpkin patch, the boats, trains, wheelbarrows, and traffic safety equipment could be said to have been used to harvest those specific pumpkins. However, at trial taxpayer was unable to provide a breakdown of the pumpkins sold to its visitors showing what proportion of those pumpkins, if any, were actually grown in the pumpkin patch. Without this information the court cannot determine whether taxpayer used its boats, trains, wheelbarrows, and traffic safety equipment to harvest pumpkins at all, as that term is used in ORS 307.394(1)(a). Taxpayer has therefore failed to satisfy the burden of showing that its boats, trains, wheelbarrows, and traffic equipment were used to harvest pumpkins.

    b.  Failure to prove the primary use of the items at issue in this case

With regard to the question of the primary use of the property at issue in this case, even if the court were to find that taxpayer's boats, trains, wheelbarrows, and

traffic equipment were used to harvest pumpkins, taxpayer has failed to satisfy the burden of showing that harvesting pumpkins was taxpayer's primary use for those items.

The county can be fairly characterized as arguing that taxpayer's primary use for the property at issue in this case is to engage in an entertainment business, albeit an entertainment business with a distinctly agricultural theme. Much of the evidence in the record supports this view. The court finds particularly compelling the county's observation that, assuming the veracity of taxpayer's own attendance estimates, roughly half of taxpayer's income comes from the admission fees that its visitors pay to ride the boats or the trains to and from taxpayer's pumpkin patch.

At trial Marty Cropp likened the payment of the admission fee by a visitor to a sort of down payment on the purchase price of a pumpkin. This comparison is not well taken, however, because taxpayer also stocks pumpkins for sale at its retail store where visitors can buy pumpkins without having to pay the admission fee. Because taxpayer prices its pumpkins the same regardless of whether they are in the pumpkin patch or in the retail store, visitors who pay to ride the trains or boats to and from the pumpkin patch end up paying a net premium of $3 for a pumpkin, versus the visitors who buy a substantially similar pumpkin from taxpayer's retail store.[2]

The existence of this premium becomes particularly vexing when one recalls that, under taxpayer's theory of this case, the visitors who pay the admission fee also harvest their own pumpkins and thus contribute their labor to taxpayer. In the court's view, if taxpayer considers its visitors stand-ins for hired farm labor then the visitors that elect to harvest their own pumpkins—and thus spare taxpayer the expense of hiring somebody to do that job—should be compensated for their contribution of labor. If their contribution is of less value than that of the pumpkin itself, it should at least be reflected in a net discount on the price of the pumpkin versus the price of a substantially similar

---

[2] The court arrives at the net $3 premium by subtracting from taxpayer's $4 general admission fee the $1 nominal discount on the purchase price of a pumpkin given to visitors who pay for passage to and from the pumpkin patch.

pumpkin from taxpayer's retail store. That these visitors are instead charged a premium suggests that these visitors are not performing a service for taxpayer, or at a minimum that the value of such service is outweighed by the value of something else that taxpayer "sells" to these visitors in addition to their pumpkins. Taxpayer's theory does not account for this "something else," even though this "something else" accounts for roughly half of taxpayer's pumpkin patch-related income. In the court's view, this "something else" is entertainment.

As a result, the court has to conclude that regardless of whether taxpayer uses its boats, trains, wheelbarrows, and traffic equipment in some instances to harvest pumpkins, it also uses these items to produce revenues by selling entertainment to its visitors. As between these two choices, taxpayer has failed to produce evidence tending to show that harvesting pumpkins is the primary use of the items at issue in this case. The court will not speculate here as to what evidence, if any, an entity in taxpayer's position could provide to satisfy its burden. However, it is taxpayer's responsibility to do so and taxpayer has failed to produce a preponderance of the evidence on this point. Taxpayer has thus failed to satisfy the burden of showing (a) that taxpayer used its boats, trains, wheelbarrows, and traffic equipment to harvest pumpkins; and (b) that this was taxpayer's primary use of these items. For both of these reasons, taxpayer has failed to prove that the property at issue is exempt under ORS 307.394(1)(a).

2.   *ORS 307.394(1)(d)*

With regard to ORS 307.394(1)(d), the court again temporarily sets aside the question of whether the property at issue in this case is "farm machinery [or] equipment." The question is then whether taxpayer's boats, trains, wheelbarrows, and traffic equipment are "used primarily in any *** agricultural or horticultural use or animal husbandry or any combination of these activities." As was discussed above, the notion of "primary use" in the text quoted above requires taxpayer to show, by a preponderance of the evidence, that whatever exempt use taxpayer claims for the property at issue in this case was also the primary use of that property.

As was also previously noted, the county has produced evidence tending to show at least one nonexempt use for the property at issue in this case: to engage in an entertainment business. Taxpayer has failed to come forward with the evidence necessary to show that, despite the presence of this other use, the primary use for these items was some form of "agricultural or horticultural use or animal husbandry or any combination of these activities." Taxpayer has therefore failed to satisfy the requirements for exemption under ORS 307.394(1)(d).

3.   *ORS 307.394(2)(a)*

Taxpayer's failure to prove an exempt primary use for the items at issue in this case likewise dooms its argument for exemption under ORS 307.394(2)(a). Taxpayer does not claim any use for the items that relates to the "construction, reconstruction, maintenance, repair, support or operation of farm machinery." Therefore the relevant text in this subsection is the provision exempting from property tax "equipment and other real or personal farm improvements that are used primarily in animal husbandry, agricultural or horticultural activities, or any combination of these activities." Here again, taxpayer has the burden of showing how a preponderance of the evidence supports the court finding an exempt primary use. Taxpayer has failed to do this. Taxpayer therefore fails to satisfy ORS 307.394(2)(a).

For the preceding reasons the court concludes that taxpayer has not satisfied the burden of proving that its boats, trains, wheelbarrows, and traffic equipment are exempt under any of the provisions of ORS 307.394 relied upon in taxpayer's briefing.

B.   *Valuation*

Inasmuch as the court has concluded that taxpayer's boats, trains, wheelbarrows, and traffic safety equipment are not exempt under ORS 307.394, the court now proceeds to valuation. At trial the county provided the court with the testimony of an appraiser who had appraised taxpayer's boats, trains, wheelbarrows, and traffic equipment for the county. The court also received in evidence the appraiser's appraisal report.

Taxpayer, on the other hand, did not provide the court with an appraisal of any of the property at issue in this case. The testimony of taxpayer's expert on valuation of watercraft was struck from the record due to the failure of taxpayer to exchange with the county documents relied upon by taxpayer's expert, as required by Tax Court Rule (TCR) 56 B. Taxpayer's expert on the appraisal of trains offered an opinion as to the value of taxpayer's trains, but no appraisal report and only a minimal discussion of the rationale supporting his opinion. Taxpayer presented the testimony of Michael Cropp as to the value of the traffic equipment and wheelbarrows at the time of his sale of the stock of taxpayer to his children. Taxpayer also provided the court with depreciation schedules that included figures for the wheelbarrows and traffic equipment. Otherwise, taxpayer's presentation on these fronts was limited to critiquing the county's appraisal.

The court has some concerns regarding the comparable sales used by the county to arrive at a valuation of taxpayer's boats and trains. However, with regard to the boats, taxpayer failed to provide admissible evidence to support its own proposed valuation. In the absence of evidence supporting an alternative valuation, the only evidence in the record on this issue is the valuation given by the county's appraiser and the data supporting the appraiser's opinion. Therefore the county's valuation must stand.

With regard to the trains the court is of the opinion that there probably is some merit in the opinion of taxpayer's expert that there is no market for handmade trains of the type at issue in this case. The experience of taxpayer's expert in the market for model trains probably gives him better than average insight into what taxpayer could expect to sell the trains for, if a buyer happened to be forthcoming. However, the court cannot allow an expert simply to act as a "black box" that generates an opinion as to valuation without disclosing significant details regarding the basis of that opinion or the methodology used to arrive at that opinion. As this court stated in *McKee v. Dept. of Rev.*, 18 OTR 58, 64 (2004), "Personal conclusions with no basis in actual market data are entitled to little or no weight." Here, the county's approach may or may not be flawed, but the market data

the county relies on is laid out in the appraisal report and the opinions as to value reached are not out of the realm of plausibility—especially given the cost to taxpayers for the materials to build the trains. The opinion as to value given by taxpayer's expert is also within the realm of plausibility, but there is nothing in the record to support it beyond the experience of taxpayer's expert in this area. The preponderance of the evidence supports the position of the county.

For the same reason the court finds that the valuations given by the county for taxpayer's wheelbarrows and traffic safety equipment are more likely than not correct. Here, again, the county has provided the court with an appraisal report showing the sales prices of comparable properties—that is to say market data, notwithstanding possible flaws in comparability—whereas taxpayer provided only bare opinion. In that sort of a match-up, the party with an appraisal on its side must prevail at trial.

C.  *Assessment of Tax and Penalties for the Five Tax Years Preceding the 2009-10 Tax Year*

Taxpayer further objects to the county's adding of taxpayer's property to the tax rolls for the tax years 2004-05 through 2009-10, with its resulting assessment of additional property tax and penalties for failing to file personal property tax returns in each of those years. The county argues that the laws of this state require the county to take these actions. The county's argument is well taken. ORS 308.105(1) requires that all personal property be assessed for taxation every tax year. If the county discovers that property has not been assessed in a given tax year, ORS 311.216(1) requires the county to begin the process of correcting the tax roll for that tax year, with the caveat that the county can only correct the tax rolls and assess tax for the current tax year and the preceding five tax years. The penalty for failing to file a personal property tax return is likewise required under ORS 308.296. The statutes in this regard are unambiguous and nondiscretionary. *See* ORS 311.232 (providing for mandamus proceedings to compel a county to add omitted property to the assessment and taxation rolls).

Here the county discovered that taxpayer's property had been omitted from the tax rolls during the 2009-10 tax

year, and that taxpayer had properly amended the tax roll for that year and for the preceding five tax years, and properly assessed additional property taxes and penalties, as required by ORS 311.216 through ORS 311.232. Taxpayer does not challenge the validity of those statutes. The county prevails as to this issue.

D.  *Defendants' Counterclaim for a Penalty under ORS 305.437*

Finally, the county and the department request a penalty against taxpayer under ORS 305.437. That statute permits the court to impose a penalty—not to exceed $5,000—whenever the court concludes that a taxpayer has instituted an appeal "primarily for delay" or that the taxpayer's position is "frivolous or groundless."

A taxpayer's position is "frivolous" if there is "no objectively reasonable basis for asserting the position." ORS 305.437(2)(a). Here, the county asserts that taxpayer's arguments are "frivolous, groundless, or both" because:

"The trains and boats are not 'farm machinery and equipment,' they are not used primarily in an enumerated farm activity, and [taxpayer] presented no evidence or argument for an expansion of the statutory definitions established in prior controlling cases on point such as *King Estate*. [Taxpayer's] valuation evidence is not credible, and despite making a valuation claim for all of the property in the personal property account, [taxpayer] ultimately only presented an 'appraisal' of one class of property, the trains. *** [The county], in reliance on [taxpayer's] Complaint, prepared a comprehensive trial appraisal in accordance with applicable legal standards for all of the property in the tax account. Finally, although [taxpayer] claimed that the prior years' omitted property assessments and penalties for failure to file were 'inappropriate,' [taxpayer] presented no evidence or argument in support of that claim."

While the court appreciates that certain frustrations may have attended the county's litigation of this case, the argument of the county is not well taken.

Taxpayer's arguments for the exemption of the boats, trains, wheelbarrows, and traffic equipment under ORS 307.394 were likewise not well taken, but it is the

opinion of this court that there are circumstances where items like those at issue in this case could be said to be "farm machinery [or] equipment" used to harvest pumpkins. Taxpayer's specific use of its property made such a determination unlikely in this case, but taxpayer ultimately lost on that aspect of the case because it failed to carry the burden of proving that the required circumstances were present in its own operations; not because its arguments were objectively unreasonable.

Taxpayer's valuation evidence was scant, but taxpayer introduced competent evidence supporting its case regarding the valuation of all of the property at issue except for the boats. Taxpayer retained an expert to provide valuation evidence regarding the boats as well, and though taxpayer was unable to enter that evidence in the record, the court is of the opinion that by retaining an expert witness, taxpayer demonstrated its intention to put on a proper case, rather than simply waste the time of the county and the court.

The court appreciates the expense and inconvenience incurred by the county in preparing an appraisal of taxpayer's entire personal property account. However, the court does not read taxpayer's complaint in this Regular Division case as calling out the valuation for the entire property tax account. Rather, the complaint specifically disputes the valuation of three types of property: taxpayer's trains, boats, and traffic safety equipment. The parties both raise a fourth class of property—the wheelbarrows—in their pretrial memoranda. If the county went to additional trouble to appraise the rest of the personal property account for purposes of the Regular Division case, it did so for its own reasons and is not entitled to remuneration.

Taxpayer's argument that the county improperly amended the tax rolls and assessed taxes and penalties for the five tax years preceding the 2009-10 tax year also does not rise to the level of frivolity. While taxpayer's argument, on its face, appears ignorant in light of the express dictates of ORS 311.216 to 311.232, the court is of the opinion that taxpayer made this argument as a necessary follow-on to taxpayer's argument that the property at issue in this case

is exempt under ORS 307.394. If that property were to be exempt, then the county's treatment of the property as omitted property—including the assessment of taxes and penalties in prior tax years—would naturally be improper. To that extent at least, taxpayer's argument had an objectively reasonable basis.

## V.   CONCLUSION

Now, therefore,

IT IS THE DECISION OF THIS COURT that taxpayer's boats, trains, wheelbarrows, and traffic equipment are not exempt under ORS 307.394;

IT IS FURTHER DECIDED that the valuation of these properties by the county is correct and that the amendment of the tax rolls and assessment of taxes and penalties for the five tax years preceding the 2010-11 tax year was proper; and

IT IS FURTHER DECIDED that the counterclaim of Defendants for a frivolous appeal penalty under ORS 305.437 is denied.