IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| DANIEL HANSEN<br>dba Hansen Veterinary Services, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 220032G |
| | ) | |
| v. | ) | |
| | ) | |
| MORROW COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appeals Defendant's assessment of *ad valorem* tax on equipment and a mobile clinic used in his veterinary practice. The tax year at issue is 2021–22. Plaintiff, Daniel Hansen, appeared *pro se* at trial and testified. Defendant, Michael Gorman, also appeared *pro se*. Testimony was received from both Defendant and his personal property appraiser, Sandra Patton. Exhibits 1 to 4 and A to L were admitted.

## I. STATEMENT OF FACTS

Plaintiff is a veterinarian in rural Morrow County, about 75 percent of whose practice involves treating large animals such as cattle and horses. He describes his expertise and equipment as "pivotal" in the management and sale of such animals. He performs ultrasounds on "thousands of head of cattle per year" to assist in determining which should be sold. During prepurchase exams, he uses a portable x-ray machine to evaluate animals' joints and specialized equipment to evaluate bulls' fertility. He has additional equipment for assisting in calf delivery, branding, and correcting tooth problems in horses. The remaining 25 percent of Plaintiff's practice involves treating small animals.

Plaintiff tows a trailer marked "Small Animal Mobile Clinic" behind his pickup truck. He describes it as follows:

> "The mobile clinic is a 20ft x 8ft x 8ft utility trailer converted into a small space to provide veterinary services and goods to patients at various locations. There are some permanent structures included in the clinic like a countertop, shelves, and a few kennels. It also stores supplies, medications, instruments, water, and other equipment used to provide services inside and outside the mobile clinic."

(Ex 3 at 1.) Photographs show the clinic's interior lined with built-in counters, cabinets, and kennels, a sink, power outlets, lighting, and two air conditioning units on the roof. (Ex 4 at 2–3; Ex K.) Equipment stored in the clinic includes items used both inside and outside the clinic—such as various drugs, suture supplies, and a stethoscope—as well as items specific to Plaintiff's large animal practice.

Plaintiff testified that the mobile clinic is registered with the Department of Motor Vehicles (DMV), which determined it was a "utility trailer" rather than a "fixed load vehicle."

Plaintiff asks the court to find that the equipment used in his large animal practice and the mobile clinic are exempt from *ad valorem* taxation. Defendant asks the court to uphold its assessment.

## II. ANALYSIS

At issue is whether Plaintiff's equipment for treating large animals is tax-exempt farm equipment under ORS 307.394(1) and whether his mobile clinic is a taxable fixed load vehicle as defined in ORS 801.285.[1]

A.      *Equipment*

Unless specifically exempted, "tangible personal property" used in a trade or business is subject to *ad valorem* taxation in Oregon. ORS 307.030; 307.190(2)(a). The definition of tangible personal property specifically includes "movable tools and movable equipment." ORS

///

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2019.

307.020(1)(c). There are various exemptions provided in the statutes, including an exemption for "[f]arm machinery and equipment" found in ORS 307.394(1).

ORS 307.394(1)(b) exempts tangible personal property that is "[f]arm machinery and equipment used primarily for the purpose of feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or bees or for dairying and the sale of dairy products[.]"[2] ORS 307.394(1)(d) adds "animal husbandry" to the list of exempt purposes. Thus, the statute's requirement is threefold: that an exempt item be "(1) 'tangible personal property,' (2) 'farm machinery and equipment,' and (3) used primarily for one of the purposes listed in ORS 307.394." *Farmer's Direct, Inc. v. Dept. of Rev.*, __ OTR __ (Feb 3, 2021) (slip op at 5) (footnote omitted). A fourth requirement is found in precedent, that the item be moved or movable in the ordinary course of business. *Id.*; *see Saunders v. Dept. of Rev.*, 300 Or 384, 390, 711 P2d 961 (1985).

/ / /

---

[2] The full text of ORS 307.394 states:

"(1) The following tangible personal property is exempt from ad valorem property taxation: (a) Farm machinery and equipment used primarily in the preparation of land, planting, raising, cultivating, irrigating, harvesting or placing in storage of farm crops; (b) Farm machinery and equipment used primarily for the purpose of feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or bees or for dairying and the sale of dairy products; (c) Machinery and equipment used primarily to implement a remediation plan as defined in ORS 308A.053 for the period of time for which the remediation plan is certified; or (d) Farm machinery and equipment used primarily in any other agricultural or horticultural use or animal husbandry or any combination of these activities.

"(2)(a) Items of tangible personal property, including but not limited to tools, machinery and equipment that are used predominantly in the construction, reconstruction, maintenance, repair, support or operation of farm machinery, and equipment and other real or personal farm improvements that are used primarily in animal husbandry, agricultural or horticultural activities, or any combination of these activities, are exempt from ad valorem property taxation.

"(b) An item of tangible personal property described in paragraph (a) of this subsection is exempt from ad valorem property taxation only if the person that owns, possesses or controls the item also: (A) Owns, possesses or controls the farm machinery, equipment and other real and personal farm improvements for which the item is used; and (B) Carries on the animal husbandry, agricultural or horticultural activity, or combination of activities, in which the farm machinery, equipment or other real and personal farm improvements are used."

In the present case, there is no dispute that Plaintiff's equipment is tangible personal property and that it is movable in the ordinary course of business. The discussion below considers whether it is farm equipment and whether it is used for an exempt purpose.

1.    *Farm Equipment*

In the absence of prior guidance from the courts, the word *farm* in the phrase "farm machinery and equipment" might be taken to restrict the sense of *machinery and equipment* (*i.e.*, equipment for farming) or it might be taken to restrict who the owner or user of the machinery and equipment might be (*i.e.*, equipment of a farm).[3] In most cases, that distinction is not important because the taxpayer is at least allegedly farming. In this case, where a nonfarmer uses equipment to assist farmers, a restriction of the latter type would easily resolve the matter. Defendant practically rested its case on the fact that Plaintiff's was not a farming business.

Our Supreme Court has construed "farm machinery and equipment" as referring to equipment for farming. *See King Estate Winery, Inc. v. Dept. of Rev.*, 329 Or 414, 419, 988 P2d 369 (1999).[4] The court reasoned from the ordinary meaning of "farm" that "farm machinery and equipment" was "machinery and equipment used to cultivate farm land or to raise animals." *Id*. Absent an additional exempt usage allowed by the statutory text—such as "the sale of dairy products"—only equipment used for cultivation or animal raising was exempt. *Id*. at 420.

---

[3] It is also possible that *farm* modifies only *machinery*, but not *equipment*. That was the view of the dissent in *King Estate Winery, Inc. v. Dept. of Revenue*, 329 Or 414, 424–26, 988 P2d 369 (1999) (Riggs, J., dissenting): "The failure to insert the word 'farm' before 'equipment' evinces a legislative intent for a broader exemption than the majority contemplates." That interpretation appears less likely when it is considered that "machinery and equipment" is a phrase commonly used in property assessment. At any rate, it is foreclosed by the court's holding in *King Estate*.

[4] The court was construing a predecessor to ORS 307.394, which has been renumbered multiple times. *See Farmer's Direct, Inc. v. Dept. of Rev.*, __ OTR __ (Feb 3, 2021) (slip op at 33 n 23) (reciting history of *former* ORS 310.608 (1977) and *former* ORS 307.400 (1985) from which current ORS 307.394(1) is derived). This court interprets ORS 307.394(1) in a manner consistent with those predecessor statutes. *See id*. (Stating higher court's discussion of former statutes was "precedential and binding for purposes of this court's analysis of ORS 307.394.")

Where the text provided an additional exempt usage, the court reasoned that it expanded the ordinary meaning of "farm." *Id*.

According to unrebutted testimony, Plaintiff's ultrasound machine, x-ray machine, and other equipment are pivotal to the management and sale of cattle. Because management and sale of livestock are exempt usages provided by ORS 307.394(1)(b), under the reasoning of *King Estate* they would expand the ordinary meaning of "farm" as used in that statute. *See King Estate*, 329 Or at 420. Calling an x-ray machine farm equipment is counterintuitive, particularly when it is not owned by a farmer. Nevertheless, the analysis in *King Estate* supports that conclusion. Whether Plaintiff's equipment qualifies for the exemption therefore cannot be determined without examining whether it is used primarily for an exempt purpose.

2. *Exempt Purpose*

The farm equipment exemption is available only where the equipment is used for one of the exempt purposes given in ORS 307.394. *Farmer's Direct,* __ OTR at __ (slip op at 5). ORS 307.394(1)(b) exempts farm equipment "used primarily for the purpose of feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or bees or for dairying and the sale of dairy products." ORS 307.394(1)(d) likewise exempts farm equipment "used primarily in any other agricultural or horticultural use or animal husbandry or any combination of these activities."

Here, Plaintiff alleges his equipment is used either for the breeding, management, and sale of livestock or, more generally, for animal husbandry.[5] To Plaintiff, "[i]t is very clear that a

///

---

[5] Animal husbandry is defined as "a branch of agriculture concerned with the production and care of domestic animals[.]" *Webster's Third New Int'l Dictionary* (unabridged ed 2002).

large animal veterinarian is working in animal husbandry." However, experience has shown that identifying the purpose for which equipment is used sometimes requires careful analysis.

The purpose for which equipment was used was at issue in *Lakeview Farms, Ltd. v. Department of Revenue*, 21 OTR 161 (2013). The taxpayer in *Lakeview Farms* charged visitors a general admission fee for access to various attractions and for passage to a pumpkin patch via either a boat across a reservoir with mechanical monsters or a train through a tunnel with Halloween decorations. *Lakeview Farms*, 21 OTR at 162–63. Visitors then could select pumpkins from the pumpkin patch and carry them back in a boat or train for purchase. *Id*. at 163–64. In deciding whether the taxpayer's boats and trains were exempt under ORS 307.394(1), the court considered whether the equipment was used primarily for harvesting pumpkins (an exempt use) or for selling entertainment (a nonexempt use). *Id*. at 170–71. The court held that more evidence supported the taxing authority's view that "the taxpayer's primary use for the property at issue * * * [was] to engage in an entertainment business, albeit an entertainment business with a distinctly agricultural theme." *Id*.

In *Lakeview Farms*, the court found the taxpayer's business model to be "compelling" evidence of its primary business purpose. *Lakeview Farms*, 21 OTR at 170. Visitors who rode the boats and trains paid a premium above the price paid for pumpkins by customers who merely bought the pumpkins at taxpayer's store. *Id*. The court reasoned that if the primary purpose of the boat and train rides had truly been aiding in the pumpkin harvest, the visitors ought to have been compensated for their service in picking pumpkins rather than charged extra. *Id*. at 170–71.

Although the evidence in the present case does not detail how Plaintiff's business differed from the businesses of the ranchers who were his clients, it is clear that Plaintiff was in the business of providing veterinary services. As a veterinarian, Plaintiff presumably charged his

clients fees and was owed money for the work he did. His ranching clients, however, would have derived their income (or loss) from the proceeds of cattle sales. Their livelihood depended on the quality and quantity of their livestock, rather than on collecting fees for services. Theirs was the business of animal husbandry and livestock management; deciding whether to hire a veterinarian was one of their business decisions. The difference in business models between a veterinarian and a rancher implies that, while a veterinarian may assist with livestock management and animal husbandry, the veterinarian's business is distinct and consists in providing professional services.

Plaintiff has put forward no evidence that his equipment was primarily used otherwise than for the sale of services. In the absence of such evidence, the court finds that Plaintiff's equipment was primarily used to provide professional services—professional services "with a distinctly agricultural theme." *See Lakeview Farms*, 21 OTR at 170–71. Professional services are distinct from ranch management, animal husbandry, or any of the other exempt purposes in ORS 307.394(1). Plaintiff's equipment therefore does not qualify for the exemption under ORS 307.394(1).

B.      *Mobile Clinic*

Plaintiff's mobile clinic is a "vehicle"; *i.e.*, it is a "device in, upon or by which any person or property is or may be transported or drawn upon a public highway." ORS 801.590. Vehicles are explicitly included within the definition of "tangible personal property" and are therefore subject to *ad valorem* taxation unless "otherwise provided by law." ORS 307.020(1)(c); *see* 307.030(1). The law generally exempts registered vehicles from further taxation, with an important exception for "fixed load vehicles":

> "Except as otherwise provided in this section or ORS 801.041 or 801.042, the registration fees under the vehicle code are in lieu of all other taxes and licenses,

except municipal license fees under regulatory ordinances, imposed on vehicles, the owners of such vehicles or the use of or any privilege related to such vehicles. *Fixed load vehicles are not exempt from ad valorem taxation by this section.*"

ORS 803.585(1) (emphasis added). Thus, fixed load vehicles remain subject to *ad valorem* property tax. The parties dispute whether Plaintiff's mobile clinic is a "fixed load vehicle."

Plaintiff argues that the DMV's determination to register the mobile clinic as a utility trailer rather than a fixed load vehicle should resolve the issue in his favor. However, neither Defendant nor this court may rely on the DMV's determination in this matter. *See Moravek's Concrete, Inc. v. Dept. of Rev.*, 7 OTR 385, 389–90 (1978) (stating court's prior reliance on Motor Vehicles Division's determination "was in error"), *aff'd*, 285 Or 495, 591 P2d 1379 (1979). Subject to appeal, "the work of classification of motor vehicles for purposes of ad valorem taxation * * * must rest with the county assessor[.]" *Id*. at 390 (interpreting predecessor to ORS 803.585).

The term "fixed load vehicle" is defined in ORS 801.285, the complete text of which is set forth in the margin.[6] The statute's first subsection lists three criteria of a fixed load vehicle's

---

[6] ORS 801.285: " 'Fixed load vehicle' means all of the following apply to the vehicle:

"(1) It is a vehicle with or without motive power that is designed and used primarily: (a) To support and move a permanent load in the form of equipment or appliances constructed as part of or permanently attached to the body of the vehicle; (b) For transportation of equipment or appliances that are ordinarily kept on or in the vehicle in order that the vehicle may be used for its primary purpose; and (c) Except for the transportation of permanent load, appliances and equipment described in paragraphs (a) and (b) of this subsection, for purposes other than for the transportation of persons or property over public highways or streets.

"(2) It is a vehicle other than the following: (a) A travel trailer. (b) A tow vehicle, including a tow vehicle with cranes, hoists or dollies. (c) A truck-mounted transit mixer or volumetric mixer. (d) A self-propelled mobile crane. (e) A bucket truck.

"(3) It is a vehicle that may include, but is not limited to, the following vehicles: (a) Air compressors, air drills, asphalt plants, asphalt spreaders, bituminous plants, bituminous mixers, bituminous spreaders and bucket loaders; (b) Concrete batch plants, concrete mixers other than transit mixers or volumetric mixers, cement spreaders, carryalls, crawler cranes, crushers and crushing plants, diggers and ditchers, power units and plants; (c) Earthmoving scrapers, electric generating equipment, electric load-bank and wiring equipment, front-end loaders, leveling graders, lighting plants and portable wiring, motor graders, payloaders, power hoists, road graders, scoopmobiles, skip hoists, stackers and hoists; (d) Athey wheels, backhoes, bituminous and concrete pavement finishers, drag lines, fork lift trucks, log loaders, portable bins, portable parts and storage bins, portable shops, portable storage tanks,

primary design and use; the other subsections contain specific exclusions and inclusions. *See* ORS 801.285.

Plaintiff's mobile clinic uncontroversially satisfies the first two criteria of a fixed load vehicle: it has built-in equipment, such as a sink, counters, power outlets, and air conditioning units, and its cabinets are stocked with equipment "ordinarily kept on or in the vehicle in order that the vehicle may be used for its primary purpose[.]" *See* ORS 801.285(1)(a), (b). Plaintiff disputes whether the third criterion is met: that a fixed load vehicle be "designed and used primarily * * * for purposes other than for the transportation of persons or property over public highways or streets." ORS 801.285(1)(c). In Plaintiff's view, the mobile clinic was primarily used for transporting property.

Plaintiff's argument appears to rest on his estimate that the mobile clinic is used more often to haul equipment for treating large animals than its interior fixtures are used for treating small animals. Plaintiff emphasizes that 75 percent of his practice involves treating large animals, with only 25 percent devoted to small animals that might fit in the clinic. The question then is whether the amount of time spent toward a given use determines whether the mobile clinic is "designed and used primarily" for purposes other than transportation. *See* ORS 801.285(1)(c).

An item's primary use might be determined quantitatively or qualitatively, depending on the tax exemption under consideration. An example of a purely quantitative test is the one prescribed for the senior services center exemption; in that context, " '[p]rimary use' means

---

power shovels, road rollers, sheepsfoot rollers and paving mixers, towermobiles, welders, yarders; (e) Bituminous and concrete finishing machines, elevator equipment, scarifiers and rooters, traction engines, vibro screens and rotary screens, wheeled and crawler tractors other than truck tractors; and (f) Apron feeders, grain grinders, grain rollers, sand classifiers and drags, sawmills and special construction equipment, scrap metal balers, scrubber screens and plate feeders."

51 percent or more of the time the property is actually used." OAR 150-307-0170(3). However, a determination of primary use is more typically qualitative—as with the use of a charitable or religious organization's facilities, in which primary use is determined from "the character and not the amount of use." *German Apostolic Christian Church v. Dept. of Rev.*, 279 Or 637, 645, 569 P2d 596 (1977). The test of whether property is primarily used for church purposes is whether it is "reasonably necessary for the advancement of church aims." *Id.*

The definition of a fixed load vehicle in ORS 801.285(1) refers to how the vehicle is "designed and used primarily." Thus, a vehicle's use should be evaluated in light of its design, qualitatively rather than purely quantitatively. A vehicle's design is strong evidence of its intended primary use, and regular usage of the vehicle's specific design features confirms that it is being used as intended. That sort of evaluation in light of design resembles the way the use of church property is evaluated in light of the church's aims. *Cf. German Apostolic*, 279 Or at 645. In such an evaluation, the amount of use is not dispositive. *See id.* Just as a house of worship's primary use may occur only once per week, the primary use of a vehicle designed for a specific purpose may not be the largest proportion of its use.

In the present case, the question is whether Plaintiff's mobile clinic is regularly used in a way that accords with its specific design features. There is no doubt the clinic is designed for treating small animals; its counters, cabinets, kennels, electrical outlets, sink, and air conditioning would be superfluous if its primary purpose were merely to haul equipment. If Plaintiff never used the fixtures, that could indicate the mobile clinic was merely an overbuilt trailer. But the importance of the fixtures is demonstrated by the fact that Plaintiff uses them regularly to see small animals and, what is more, advertises that he does so on the clinic's side.

/ / /

The clinic's regular use according to its design shows that its primary use is not mere transportation.

Even on visits to large animals, the clinic had usefulness beyond an ordinary trailer. Plaintiff used "supplies, medications, instruments, water, and other equipment * * * to provide services inside and outside the mobile clinic." Those items were organized in the clinic's cabinetry for use across Plaintiff's practice—including use in his large animal practice "outside the mobile clinic"—and the water was available through the clinic's sink. If the mobile clinic had served only for transportation, Plaintiff could have saved fuel expenses by carrying his equipment in the back of his truck. However, if he had done so his equipment would have been less accessible for use in his small animal practice. The clinic's cabinetry kept the equipment organized even when Plaintiff brought the trailer with him in his large animal practice.

All told, the mobile clinic more closely resembles one of the "portable shops" specifically included within the definition of a fixed load vehicle than any of the vehicles specifically excluded by the statute. *See* ORS 801.285(3)(d). It is designed for use as a clinic and used for that purpose both when animals are brought inside it and when veterinary equipment is retrieved from it for use outside it. The court finds the clinic is a fixed load vehicle and therefore does not fall under the exemption from taxation for registered vehicles. *See* ORS 801.285(1).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

III. CONCLUSION

Plaintiff's equipment is used for providing professional services rather than for purposes qualifying for tax exemption under ORS 307.394(1), and Plaintiff's mobile clinic is a fixed load vehicle and therefore does not qualify for tax exemption under ORS 803.585(1). Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal be denied.

Dated this _____ day of December 2022.

_____
POUL F. LUNDGREN
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Poul F. Lundgren and entered on December 19, 2022.*