IN THE OREGON TAX COURT
REGULAR DIVISION
Property Tax

FARMERS DIRECT, INC., )
)
          Plaintiff, ) **TC 5328**
    v. )
)
DEPARTMENT OF REVENUE, )
State of Oregon, )
)
          Defendant, )
)
    and )
)
YAMHILL COUNTY ASSESSOR, )
    ) **ORDER GRANTING DEFENDANT'S**
          Defendant-Intervenor. ) **MOTION FOR SUMMARY JUDGMENT**

This matter is before the court on Defendant Department of Revenue's (the department's) motion for summary judgment. In a prior motion for summary judgment dated filed March 5, 2019, the department asked the court to determine that the subject property, a straw compression system, was not "tangible personal property" and thus was ineligible for exemption from property tax under any provision of ORS 307.394(1).[1] The court denied the motion on the ground that material facts were required to be resolved at trial. *See Farmer's Direct, Inc. v. Dept. of Rev.*, 24 OTR 399, 438 (2021). In the instant motion, the department asks the court to determine that the Compression System is ineligible for exemption under ORS 307.394(1)(a),

---

[1] Unless otherwise indicated, all references to the Oregon Revised Statutes (ORS) are to the 2015 edition.

(b), or (d). Plaintiff (Taxpayer) resists the motion. The tax years at issue are the property tax years 2016-17 and 2017-18.

## I.    FACTS

The following facts are not disputed. Taxpayer is an Oregon corporation in the business of compressing large bales, consisting almost entirely of straw, into smaller bales using a Steffen Systems Model 4600SP Big Bale Compression System (Compression System). (*See* Stip Facts at 2, ¶¶ 1, 4-5; Ptf's Decl of Gaibler at 2, ¶ 8.) The straw is a byproduct of grass seed farming and is left on the fields in windrows when a combine cuts the standing grass and separates the grass seeds into a tank. (*See id*. at 2, ¶ 13.) The straw must be finely mulched onto farm fields, or removed from farm fields, to avoid suffocating the next year's grass seed crop or to allow for replanting. (*See id*. at 2, ¶ 14.)

Until about 1993, grass seed straw commonly was piled and burned. (*See id.* at 2, ¶¶ 11-12.) Straw is not commonly used as an animal feed in the United States. (*See* Ptf's Decl of Lerwick at 2, ¶ 13.) A market for straw exists in Asia, where customers often mix the straw with other proteins, sugars, and fibers for use as animal feed. (*See id*., ¶¶ 9, 10, 12.) However, it is not cost-effective to ship the large, "single-pressed" bales that are formed by mobile balers collecting the straw left on the fields in windrows. (*See id.* at ¶ 8.) Single-pressed bales are approximately three feet by four feet, by seven to twelve feet in length. (*See* Ptf's Decl of Gaibler at 3, ¶ 15; Stip Facts at 3, ¶ 13.) Single-pressed bales are commonly moved to a covered location shortly after baling in the field to avoid subjecting the baled straw to rain. (*See* Ptf's Decl of Gaibler at 3, ¶ 16; Stip Facts at 4, ¶ 21 ("Hay and straw is initially baled in the farm fields, and then transported to barns plaintiff leases before being compressed.").) From there, the single-pressed bales are taken to the Compression System, which is located in a barn that

Taxpayer leases near the fields farmed by Taxpayer's shareholders. (*See* Stip Facts at 4, ¶ 17; Ptf's Decl of Gaibler at 4, ¶ 25.) The single-pressed bales are fed into the Compression System, which cuts them in half, compresses them lengthwise, and wraps them for shipment, resulting in smaller bales that are about one-half as tall, around 80 percent shorter, and up to twice as dense, compared to single-pressed bales. (*See* Stip Facts at 3, ¶ 10, 13, 14, 16.)

Approximately one-half the straw that is double-pressed is sourced from fields owned by Taxpayer's shareholders, and the other half is purchased from other farms. (*See* Stip Facts at 4, ¶ 20) The barn where the Compression System is located is on land in Yamhill County that is zoned for exclusive farm use. (*See* Stip Facts at 4, ¶ 17; Ptf's Decl of Huddleston at 2, ¶ 8, Exs 1 & 2.)

## II.    ISSUE

Is the Compression System exempt from property tax under ORS 307.394(1)(a), (b), or (d)?

## III.    ANALYSIS

A.    *Relevant Statute:  ORS 307.394(1)*

The department seeks summary judgment that the Compression System is ineligible for exemption under paragraphs (a), (b), and (d) of ORS 307.394(1). Taxpayer does not seek exemption for the Compression System under the remaining paragraph, ORS 307.394(1)(c). The court reprints ORS 307.394(1) in its entirety:

> "(1) The following tangible personal property is exempt from ad valorem property taxation:
>> "(a) Farm machinery and equipment used primarily in the preparation of land, planting, raising, cultivating, irrigating, harvesting or placing in storage of farm crops;
>> "(b) Farm machinery and equipment used primarily for the purpose of feeding, breeding, management and sale of, or the produce of, livestock,

poultry, fur-bearing animals or bees or for dairying and the sale of dairy products;

"(c) Machinery and equipment used primarily to implement a remediation plan as defined in ORS 308A.053 for the period of time for which the remediation plan is certified; or

"(d) Farm machinery and equipment used primarily in any other agricultural or horticultural use or animal husbandry or any combination of these activities."

B.    *Meaning of "Farm Machinery and Equipment" Under King Estate*

In *King Estate Winery, Inc. v. Dept. of Rev.*, 329 Or 414, 988 P2d 369 (1999), the Oregon Supreme Court construed the predecessor of paragraph (d) of ORS 307.394(1), as well as the term "[f]arm machinery and equipment," which appears in both paragraphs (d) and (a).[2] Accordingly, this court begins by examining the analysis in *King Estate* and, to the extent applicable, applying that analysis to Taxpayer's claims for exemption under paragraphs (a) and (d).

In *King Estate*, the property at issue was tangible personal property used to make and sell wine in the taxpayer's winery, consisting of (1) "'equipment used to stem and crush the grapes, filter the juice, and ferment and store the wine'"; (2) furniture used in the dining room and guest rooms; (3) computers and other recordkeeping equipment; (4) rolling stock, including forklifts, and a generator; and (5) materials and supplies. *King Estate*, 329 Or at 416 (quoting 14 OTR 169, 170-171 (1997)). The court held that the property was not "farm machinery and equipment," and that the operation of a winery was not an "agricultural or horticultural use." *See id.* at 418-19, 421, 424.

The court first examined the text and context of "farm," within the phrase "farm machinery and equipment." The court stated:

---

[2] Except for recodification, the only difference between the 2015 text of ORS 307.394(1)(d) and the text of *former* ORS 307.400(3)(c) (1993) at issue in *King Estate* is the insertion of "any combination of these activities" in lieu of the former phrase "any combination thereof." Or Laws 2001, ch 753, § 15.

"The plain, natural, and ordinary meaning of the word 'farm' is 'a piece of land held under lease for cultivation' or 'a plot of land devoted to the raising of domestic or other animals.' *Webster's Third New Int'l Dictionary*, 824 (unabridged ed 1993). Based on the plain, natural, and ordinary meaning of the word 'farm,' we infer generally that 'farm machinery and equipment' means machinery and equipment used to cultivate farm land or to raise animals."

*Id.* at 419. Turning to context, the court looked to the predecessor of paragraph (a) of ORS 307.394(1), the text of which is unchanged. The court described that provision as expressing a "natural progression" of activities in which farm machinery and equipment is used for land or crop "cultivation," as opposed to the processing of crops or the sale of processed crops. *Id.* at 419-20. The court examined other exemptions that at that time were codified in the same statute, concluding that they, too, were limited to "to cultivating crops on land or to raising animals on land, which is how a 'farm' ordinarily is defined." *Id.* at 421; *see* ORS 307.325 (exempting livestock, poultry, fur-bearing animals and bees); ORS 307.391 (exempting radio equipment used in field burning management); ORS 307.394(2) (exempting certain tools, machinery, and equipment used in animal husbandry or agricultural or horticultural activities); ORS 307.397 (exempting what was previously contained in ORS 307.400(5) (1993)).

This court summarizes the court's conclusions in *King Estate* based on text and context as follows: "Farm machinery and equipment" encompasses only machinery and equipment used to "cultivate farm land" (*Id.* at 419), to "cultivat[e] crops on land" (*Id.* at 421), or to "rais[e] animals on land" (*Id.*). In *King Estate*, the court quickly decided that the winery property was not used for two of those three uses: "cultivating farm land or raising animals." *Id.* at 419. The remaining use (cultivating crops) is a "progression" that commences with the "preparation of land" and ends with "placing in storage" of crops. *Id.* at 419-20 The uses of the winery property--"*to process* fruit and *to sell* the fruit product"--were outside the scope of this progression. *Id.* at 423 (emphases in original).

C.      *Applying* King Estate *to Define "Farm Machinery and Equipment"*

        1.      *Is the Compression System used to cultivate crops on land?*

        This court now applies the three meanings of "farm machinery and equipment"

determined in *King Estate*, starting with machinery and equipment used to "cultivat[e] crops on

land." Although a byproduct of grass seed farming, there is no question that grass seed straw is a

"crop." *See* ORS 174.102 ("(1) The term 'agricultural commodity' or 'agricultural product'

includes straw. (2) The harvesting or bailing of straw is a farming practice."). Rather, the

question is whether "double-pressing" is part of the "natural progression" that starts with

"preparation of land," ends with the "placing in storage" of the straw crop, and includes any of

the intermediary activities listed in ORS 308.394(1)(a).

        As to "preparation of land," the uncontested evidence is that waste straw must be

removed from the land (or mulched) because it would suffocate the next year's grass seed crop if

left on the land. (*See* Ptf's Decl of Gaibler at 2, ¶ 14.) The act of removing the waste straw

could, therefore, constitute preparation of the land. However, the Compression System is not

used to remove the waste straw from the land; double-pressing occurs only after the waste straw

already has been removed. While double-pressing likely makes removal more economically

viable, by enabling the straw to be sold abroad, double-pressing does not occur on the land where

a new crop will be grown; therefore, the court concludes that the Compression System is not

"used * * * in the preparation of land." (*See* Ptf's Decl of Lerwick at 1-2, ¶¶ 6-8 (compressing

bales makes shipping overseas more efficient and less costly).)

        The court considers the other end of the progression: the "placing in storage of farm

crops." The court applies the framework in *State v. Gaines* to construe this phrase, which the

legislature wrote in 1981. *See* 346 Or 160, 171-72, 206 P3d 1042 (2009); Or Laws 1981, ch 374,

§ 1. At that time, the plain meaning of "storage" was a place or space for storing, or the act of storing. *Webster's Third New Int'l Dictionary* 2252 (unabridged ed 1976). "Storing," in turn, meant to "stock or furnish against a future time"; to "collect as a reserved supply; or to "leave or deposit in a store, warehouse, or other place for keeping, preservation, or disposal."[3] *Id.* The contemporaneous technical legal definition of the verb "store" was "[t]o keep [goods, etc.] for safe custody, to be delivered in the same condition as when received, where the safe-keeping is the principal object of deposit, and not the consumption or sale." *Black's Law Dictionary* 1273 (5th ed 1979). Both the plain meaning and the technical legal meaning contemplate that the

---

[3] The full definition of "storage" at the time was:

> "1a: space for storing <[storage] available at low rates> <[storage] cabinet> <[storage] room> b: a place for storing <area, which was being used as a [storage] for war matériel — *N. Y. Times*> <granaries and other unheated crop [storages] — *Nat'l Fire Codes*> <insulation requirements for fruit and vegetable [storages] — P. D. Close> <the development of water [storages] in arid regions> c: an amount stored  esp. : the total amount (as of water in a reservoir) that can be stored in a place <the dam … has a total [storage] of eight billion cubic feet of water — *Amer. Guide Series: Maine*> 2a: the act of storing or state of being stored <off-street [storage] of automobiles> <underground [storage] of natural gas> <lake, created primarily for upstream [storage] — *Amer. Guide Series: Nev.*> <meat packaged for [storage]> *specif* : the safekeeping of goods in a warehouse or other depository <place goods in [storage]> — compare COLD STORAGE b: the price charged for keeping goods in a storehouse <to charge [storage]> c: the holding and housing of goods from the time they are produced until their sale 3: the production by means of electric energy of chemical reactions that when allowed to reverse themselves generate electricity again without serious loss — see STORAGE CELL 4: MEMORY 6"

*Webster's Third New Int'l Dictionary* 2252 (unabridged ed 1976).

> The full definition of "store" at the time was:

> "1: FURNISH, PROVIDE, SUPPLY, FILL <bins [stored] with grain> <his head was [stored] with chaotic but vivid impressions — Frances Gaither> *esp.* : to stock or furnish against a future time <[store] a ship with provisions> 2: to collect as a reserved supply : lay away : ACCUMULATE <[store] vegetables for winter use> <energy from the sun may be [stored] in the form of fat as well as carbohydrates … and proteins — R. E. Coker> <energy [stored] in a condenser can be computed — W. H. Timbie & Vannevar Bush> —often used with *up* or *away* <build dams to [store] up water — R. W. Murray> <memories [stored] away> 3a: to leave or deposit in a store, warehouse, or other place for keeping, preservation, or disposal : CACHE, STOW <potatoes [stored] in a basement> <in the early days of the passenger car it was almost unheard of to [store] it on the street — J. C. Ingraham> <the center mall is often used to [store] snow plowed from the pavement in winter months — A. G. Bruce & John Clarkeson> <honey [stored] in hives> b: to record (information) in an electronic device (as a computer) from which the data can be obtained as needed 4: to have space for : provide storage room for : HOLD <elevators to [store] surplus wheat>"

*Id.* (emphasis in original).

period of storage will end at some future time, but neither definition indicates any particular duration. In this case, two statements in the factual record indicate that storage of the straw occurs before the Compression System is used. First, the parties have stipulated that "[h]ay and straw is initially baled in the farm fields, and then transported to barns plaintiff leases before being compressed." (Stip Facts at 4, ¶ 21.) Second, a witness for Taxpayer testified that "[b]aled straw and hay are commonly moved to a covered location shortly after baling in the field to avoid subjecting the baled straw and hay to rain." (Ptf's Decl of Gaibler at 3, ¶ 16.) The court interprets "baling in the field" to mean the initial baling, not the double-pressing for which the Compression System is used. The court finds that this movement of the baled straw to a barn or other covered location constitutes "placing in storage" of the straw. Double-pressing occurs only after any such placement in storage. Therefore, the court concludes that the Compression System is not "used * * * in the * * * placing in storage of farm crops."

The court next considers whether double-pressing might still be used to "cultivat[e] crops on land" by fitting within any of the intermediate activities listed in ORS 307.394(1)(a): "planting, raising, cultivating, irrigating, [or] harvesting * * *." The court finds no basis to treat the Compression System as used in "planting," "raising," or "irrigating" crops, nor does Taxpayer argue that the Compression System performs any one of those activities in isolation.[4] The plain meaning of "cultivating," in reference to crops and as of 1973, was broad: to "protect and encourage the growth of" and to "till or labor over."[5] *Webster's Third New Int'l Dictionary*

---

[4] The court discusses below Taxpayer's argument that double-pressing is an "integral and necessary part" of the activities listed in ORS 307.394(1)(a).

[5] The full definition of "cultivate" at the time was:

> "1: to prepare for the raising of crops : prepare and use for such a purpose : TILL <[cultivate] the soil> *specif* : to loosen or break up the soil about (growing crops or plants) for the purpose of killing weeds and modifying moisture retention of the soil esp. with a cultivator 2: to protect and encourage the growth of: a: to till or labor over *esp* : to apply methods of culturing to <[cultivate]

552 (unabridged ed 1971). "[P]rotecting" and "labor[ing] over" a crop could encompass activities occurring after a crop has been placed in storage. However, by referring to a "natural progression," the court in *King Estate* clearly interpreted "cultivating" in the narrower sense conveyed by the phrase "encourage * * * growth," which refers to actions taken with respect to living plants. The court concludes that the Compression System is not used for planting, raising, cultivating, or irrigating the straw crop.

The plain meaning of "harvesting," in reference to a crop or natural product, was to "gather" or "gather in."[6] *Webster's Third New Int'l Dictionary* 1036 (unabridged ed 1971). The plain meaning is consistent with this court's precedent, which has interpreted "harvesting" as severing fruit or other crops, collecting them, and removing them from the location where they grew. In *Lakeview Farms, Ltd. v. Dept. of Rev.*, 21 OTR 161 (2013), this court analyzed whether wheelbarrows, as well as boats and trains and traffic safety equipment, used at the taxpayer's "pumpkin patch" were used in "harvesting" within the meaning of ORS 307.394(1)(a). The pumpkin patch was a fixed, 14-acre plot where the taxpayer displayed pumpkins that customers could select and bring to the cash register by means of a wheelbarrow, or by riding a boat across

---

oysters> <[cultivate] yeasts> b: to improve by labor, care, or study : bring to culture, civilization, or refinement <writers who [cultivate] style> 3: to cause to grow by special attention or by studying, advancing, developing, practicing, or publicizing : FURTHER, ENCOURAGE <Italy, where law and medicine were *cultivated*, and the North, where theology with logic and metaphysics were supreme — H. O. Taylor> 4: to seek the society of : make friends with <outraged constantly by the odd assortment of people my father *cultivated* — Elsa Maxwell>"

*Webster's Third New Int'l Dictionary* 552 (unabridged ed 1971) (emphasis in original).

[6] The full definition of the verb "harvest" at the time was

"1a: to gather in (a crop) : REAP <when all the beets are [harvested] a steam shovel loads them on trucks — *Amer. Guide Series: Minn.*> b: to gather (a natural product) as if by harvesting <[harvest] honey> <[harvest] timber> <[harvest] whales> 2a: to accumulate a store of <[harvest] news leads and witticisms — Bennett Cerf> b: to win as a result of achievements <[harvested] rewards in fame and wealth … simply undreamed of — *N. Y. Herald Tribune*>"

*Webster's Third New Int'l Dictionary* 1036 (unabridged ed 1971).

a reservoir on the plot, or by riding a small, minimum-gauge train built by the man who owned the taxpayer company. Some of the pumpkins were grown on other parts of the taxpayer's farm, or occasionally on farms belonging to others, because the same plot of land could not be used to grow pumpkins year after year. *See id.* at 163. The court concluded that the pumpkins were "harvested" when they were picked at, and removed from, the location where they grew. To the extent that pumpkins were grown outside the 14-acre pumpkin patch, they were not "harvested" when customers carried or hauled them to the cash register. Rather, the pumpkin patch functioned as a "storage" area for those pumpkins while awaiting sale. *Id.* at 169. The court denied the exemption for failure of proof.[7] Applying that analysis, in this case the court cannot conclude that the Compression System is used in "harvesting" the straw because by the time the straw is double-pressed, it has already been cut, removed from the field, and stored.

Overall, the court concludes that the Compression System is not used to "cultivat[e] crops on land" because it is used only after the "natural progression of crop cultivation" set forth in ORS 307.394(1)(a) has occurred, and it is not used in any of the specific activities listed in ORS 307.394(1)(a). The court will turn to the two remaining uses that define "farm machinery and equipment": "cultivat[ing] farm land" and "rais[ing] animals."

2.      *Is the Compression System used to cultivate farm land?*

The court in *King Estate* did not elaborate on any distinction between cultivating farm land and cultivating crops. The court may have found any such discussion unnecessary because the processing and marketing activities involved in operating the winery did not require any interaction with the land where the grapes were grown and, in fact, did not need to occur on farm land at all. The taxpayer in *King Estate* processed grapes from vineyards that were "adjacent" to

---

[7] The taxpayer could not provide a breakdown of pumpkins harvested on the pumpkin patch vs. elsewhere. *See id.* at 169.

the winery and controlled and managed by the same individuals, as well as grapes from other, "surrounding" vineyards. *See* 329 Or at 416. Similarly, the facts in this case show no necessary connection between the activities of the Compression System and farm land; the only evidence is that the leased barn where the Compression System is located is "near" the land farmed by Taxpayer's shareholders. (Ptf's Decl of Gaibler at 4, ¶ 25; *see* Stip Facts at 4, ¶ 17.) And like the compression activity in this case, the winery activities apparently occurred on land zoned and classified for farm use under zoning laws and for property tax purposes and were permitted activities under those provisions, but those facts did not persuade the court that the winery activities amounted to "cultivat[ing] farm land." *See id.; see also King Estate Winery, Inc. v. Dept. of Rev.,* 14 OTR 169, 171 (1997) (noting relationship between "farm use" for special assessment purposes and for land use purposes), *aff'd,* 329 Or 414. (*See* Stip Facts at 4, ¶ 17; Ptf's Decl of Huddleston at 2, ¶¶ 8, 10 & Exs 1 & 2.) The court concludes that the Compression System is not used to cultivate land.

3.      *Is the Compression System used to raise animals on land?*

Finally, the court in *King Estate* implied that "rais[ing] animals" involves the "feeding" of animals, as well as their "breeding" and "management," but not the "sale" of the "produce" of animals. *Id.* at 420 (citing ORS 307.394(1)(b)).[8] The court in this case sees no basis to treat the Compression System as used in the "breeding" or "management" of animals, nor does Taxpayer make any argument as to those terms. As for "feeding," the plain meaning in 1977 was "the act or process of one that feeds or the act or process of being fed . . . an instance of feeding esp. something more or less incapable of providing its own food or of feeding itself." *Webster's*

---

[8] It is unclear to this court, but also not relevant to this case, whether *King Estate* implies that the "sale of" animals is part of the "raising" of animals. *See id.;* ORS 307.394(1)(b) (exempting farm machinery and equipment used primarily for the purpose of "sale of, or the produce of," certain animals).

*Third New Int'l Dictionary* 834 (unabridged ed 1976).[9]  The relevant definitions of the verb

"feed" were: "to give food to : supply with nourishment : satisfy the hunger of * * * to convey

food to the mouth of * * * to furnish especially with something that is essential or that improves

or enhances * * * to produce [or provide] food for * * * to give as food * * * to furnish for use or

consumption."[10] *Webster's Third New Int'l Dictionary* 833-34 (unabridged ed 1976).  The

relevant legal definition of the verb "feed" was: "[I]n its ordinary sense with reference to cattle

and hogs which are said to be made marketable by feeding." *Black's Law Dictionary* 742 (4th ed

1968).[11]  The court concludes that the plain meaning includes numerous variations on the

physical act of putting food into the mouth of an animal, as well as more attenuated acts that

---

[9] The full definition of the word "feeding" at the time was:

> "**1a:** the act or process of one that feeds or the act or process of being fed<all fruit purchased will
> be used to assist in relief [feeding] in foreign countries — *Collier's Year Book*><the jamming of
> the mechanism stopped the [feeding] of the coke into the furnace> **b:** an instance of feeding esp.
> of fertilizer><gave the baby eight ounces of milk at each [feeding]> **2:** land used for grazing."

*Webster's Third New Int'l Dictionary* 834 (unabridged ed 1976).

[10] The full relevant definitions of "feed" at the time were:

> "1a: to give food to : supply with nourishment : satisfy the hunger of <[feed] several guests> <[feed] the
> chickens> *also* : suckle <[feed] a baby at the breast> b: to convey food to the mouth of <a patient so weak
> he had to be *fed*> <[feed]*ing* a small child in a high chair>3a: to produce food for <the pasture *fed* the cows
> poorly> b: to provide food for <enough wheat to [feed] the troops for a week>6a: to give as food <[feed]
> grain to chickens> b : to furnish for use or consumption <[feed]*ing* coal to a furnace> often in appropriate
> or convenient amounts <hurried to another hospital to borrow a machine which he hoped would [feed] the
> oxygen mechanically — Grace Reiten>—often used with out <the flatbed press [fed] out papers each
> afternoon about as fast as I could deal cards — C. C. Wertenbaker>"

*Webster's Third New Int'l Dictionary* 833-34 (unabridged ed 1976).

[11] The full definition read:

> "To lend additional support; to strengthen *ex post facto*. 'The interests when it accrues *feeds* the
> estoppel.' Christmas v. Oliver, 5 Mood. & R. 202. Similarly, a subsequent title acquired by the
> mortgagor is said 'to feed the mortgage.' The word is used in its ordinary sense with reference to
> cattle and hogs which are said to be made marketable by feeding. Brockway v. Rowley, 66 Ill.
> 102. It is also used in the phrase 'feeding of a cow by and on the land' to signify from the land
> while there is food on it, and with hay by the owner of the land at other times; 2 Q.B.Div. 49."

*Black's Law Dictionary* 742 (4th ed 1968).

result in satisfying an animal's hunger. The legal definitions are consistent with the plain meaning but include additional indirect or figurative senses. To determine the range of these meanings, the court returns to *King Estate*. There, the court considered the list of exempt properties now codified in ORS 307.397 and ORS 307.398, including frost control systems; trellises; hop harvesting equipment; equipment to prepare, package and ship fresh eggs; and field burning smoke management equipment. 329 Or at 421. The court stated:

> "All the aforementioned exemptions in ORS 307.400 pertain to cultivating crops *on land* or to raising animals *on land*, which is how a 'farm' ordinarily is defined. Thus, between the plain meaning of the word farm and the contextual implications of ORS 307.400, we find no legislative intent to include machinery and equipment used in fruit *processing* and fruit-product *selling* as part of the definition of 'farm machinery and equipment.'"

*Id.* (emphases added). This court interprets the contextual analysis in *King Estate* as generally excluding activities that are not required to occur on the same land where crops are grown or animals are raised. Applying the same approach in this case, this court interprets "feeding"--as a component of "raising"--to exclude those definitional senses that are substantially separated by steps or by distance from the physical act of putting food into the mouth of an animal. The Compression System is substantially separated by both steps and distance: before an animal can be "fed" by the activity of double-pressing a bale, the compressed bale must be loaded onto a ship, sent overseas, infused with other nutrients, and transported to an end user, potentially by means of middlemen. (*See* Stip Facts at 3, ¶ 11; Ptf's Decl of Lerwick at 2, ¶¶ 9-13.) The court must conclude that the Compression System is not used for "feeding" animals, and it therefore is not used to "raise" animals.[12]

---

[12] For the same reasons discussed above, the court rejects Taxpayer's argument that the Compression System is used for "feeding" and thus is eligible for exemption under ORS 307.394(1)(b) as a standalone provision. (*See* Ptf's Response at 23.)

4. *Conclusion: The Compression System is not "farm machinery and equipment"*

Based on the foregoing analysis under *King Estate*, the Compression System is not "farm machinery and equipment." This conclusion alone requires the court to deny exemption under each of the three paragraphs of ORS 307.394(1) on which Taxpayer bases its claim: paragraphs (a), (b) and (d).

D. *Other Arguments*

Notwithstanding the court's conclusion, the court comments briefly on the parties' arguments regarding whether the Compression System is used in "any other agricultural * * * use" under ORS 307.394(1)(d). Taxpayer argues that the addition of this term, now in paragraph (d), broadened the scope of the exemption otherwise available under paragraph (a). (Ptf's Resp at 23-24.) *See* Or Laws 1977, ch 819, § 1 (HB 2847). The court in *King Estate* implicitly rejected that argument. The court noted that the plain meaning of "agriculture" included "'the science or art of the production of plants and animals useful to man *and in varying degrees the preparation of these products for man's use and their disposal*.'" 329 Or at 423 (emphasis added) (quoting *Webster's Third New Int'l Dictionary* 44 (unabridged ed 1993). Nevertheless, the court concluded that "the dictionary definition of 'agriculture' is consistent both with the plain definition of a 'farm' and with the contextual meaning of a 'farm' * * *." 329 Or at 423-24.

This court observes that the legislative history of the bill that added the reference to "any other agricultural * * * use" repeatedly describes the new provision as "broadening" the scope of the exemption. *See, e.g.,* Measure Analysis Statement, House Committee on Revenue and School Finance, HB 2847, Jun 27, 1977 (describing the function and purpose of measure as "[b]roaden[ing] the definition of inventory" related to farm machinery and equipment); Tape Recording, House Committee on Agriculture and Natural Resources, HB 2847, Apr 26, 1977,

Tape 35, Side 1, 24:45 (describing amendments as "broaden[ing] what falls under the inventory phase out"); House Revenue and School Finance Committee, HB 2847, May 25, 1977, Tape 28, Side 2, 2:15:45-2:16:30 (describing the types of machinery and equipment that would be exempt). However, given the court's interpretation in *King Estate*, this court considers "broadening" to mean that the legislature, at most, may have intended to make the list of activities within the "natural progression" in paragraph (a) non-exclusive, encompassing *intermediate* steps not expressly named in that paragraph, without extending the range of activities beyond the *final* step of "placing [crops] in storage." Accordingly, Taxpayer's position that double-pressing is an "integral part" of the activities listed in paragraph (a) falls short. (*See* Ptf's Response at 10-11.) Because double-pressing occurs after placement in storage, it is not relevant, under *King Estate*, that double-pressing may make it more likely that the straw may be planted and harvested at all.

Relatedly, it is not necessary to revisit whether the more expansive definitions of "farm use" for land use purposes and for purposes of the farm use special assessment laws are relevant to the meaning of "farm machinery and equipment," "any other agricultural use," or any of the other terms in ORS 307.394(1). *See* ORS 308A.056 (defining "farm use" for purposes of special assessment of land); ORS 215.203(2)(a) (1977) ("farm use" includes current employment of land for "any other agricultural or horticultural use"); *King Estate*, 329 Or at 422 (discussing cross-references in special assessment statutes to land use statutes). Taxpayer argues forcefully that it defies common sense that a compression system should be ineligible for exemption under ORS 307.394(1), while the land on which a compression system sits clearly is eligible for the intentionally lower taxable value available under the farm use special assessment statutes. (*See* Ptf's Response at 20-21.) That is a policy argument that must be made in a different forum. *See*

*Comcast Corp. v. Dept. of Rev.*, 363 Or 573, 550 (2018) ("Taxpayer's criticism of [statutory] result as 'absurd' provides no basis for [a court's] disregarding the legislature's policy choice.").

Finally, the court's conclusion makes it unnecessary to consider whether double-pressing is "processing," as discussed at numerous points in the parties' briefing. Although *King Estate* uses that term to describe the activities of the winery in that case (329 Or at 419), an activity need not constitute "processing" to be excluded from the definition of "farm machinery and equipment"; the activity need only be outside the "natural progression" of activities commencing with "preparation of land" and ending with "placing in storage" under ORS 307.394(1)(a).

## IV.    CONCLUSION

The court concludes that the Compression System is ineligible for exemption under ORS 307.394(1)(a), (b), and (d) because it is not "farm machinery and equipment" as that term is construed in *King Estate*. Now, therefore,

IT IS ORDERED that Defendant's Motion for Summary Judgment – ORS 307.394(1)(a) and (d) is granted.

Dated this 6th day of September, 2023.

9/6/2023 11:53:48 AM

Judge Robert T. Manicke